(Decided January 5th, 1898).

---

THE METROPOLITAN SAVINGS BANK *vs.* BER-
NARD MANION.

*Nuisance—Livery Stable—Liability of Landlord for Nuisance on De-
mised Premises—Evidence—Expert Testimony.*

A livery stable in a city is not *per se* a nuisance, but it may be so constructed or used as to constitute a nuisance and entitle parties annoyed by it to a remedy.

If a landlord leases premises which are not in themselves a nuisance, but may or may not become such according to the manner in which they are used by the tenant, the landlord will not be liable for a nuis-

ance created on the premises by the tenant. But if the premises are a nuisance when leased, or must in the nature of things become such by their use, and the landlord receives rent, then whether in or out of possession, he is liable for the nuisance.

Plaintiff, the owner of a dwelling·house adjoining a livery stable owned by the defendant and leased by the latter to a tenant, brought an action to recover damages for a nuisance, alleging that noxious gases and odors came through windows which were placed in the wall of the stable on a line with the windows of the plaintiff's house. *Held*,

1st. That if the stable was so constructed that when used with proper care it would not cause an undue amount of discomfort to persons of ordinary sensibilities, then the defendant is not liable for the consequences of an improper use of the stable by his tenant.

2nd. That if it was not necessary for the proper ventilation of the stable that the windows adjoining plaintiff's house should be left open, then the defendant is not liable for the act of the tenant in leaving them open, although the windows were designed when the stable was built to give light and also ventilation, if necessary.

The right of a party to maintain an action for a nuisance is not affected by notice from him to the defendant not to create it, and consequently evidence in regard to such notice is not admissible.

When a nuisance has been created by the defendant himself and not by the former owner of the property, no notice to him to abate it is necessary before bringing suit, and therefore evidence relating to such notice is not admissible.

Where the condition of things alleged to constitute a nuisance has been fully described to the jury, a witness cannot be asked whether in his opinion that condition of things was a nuisance, because expert testimony is not admissible upon questions of fact, which the Court or jury can decide for themselves.

Appeal from the Superior Court of Baltimore City (WRIGHT, J.) At the trial the following prayers were offered:

*Plaintiff's First Prayer.*—If the jury find from the evidence that the plaintiff is the owner of the premises situated in a residential section of Baltimore City, and known as "No. 1021 North Eutaw street," the same being improved by a dwelling house fronting on Eutaw street and a smaller dwelling house on rear of said lot, and if they find that the defendant, being owner of the lot adjoining the plaintiff's on the southeast, erected or caused to be erected thereon a

large building designed for the use of a livery stable, and that said building has been used as a livery stable since its completion; and if they shall further find that the said stable was so improperly constructed that in its ordinary use, as so constructed, large quantities of foul and offensive smells and odors entered and penetrated the plaintiff's premises, and that the said foul and offensive odors and smells were of such a character and were emitted in such quantities as to cause material discomfort and unreasonable annoyance to the tenants of the plaintiff's premises, so that the said premises were rendered unreasonably unfit for the purposes for which they were designed, namely, dwelling houses, and so that the plaintiff's tenants deserted the said premises and the plaintiff has lost the rents thereof; then, if the jury find such, their verdict must be for the plaintiff. (Granted.)

*Plaintiff's Second Prayer.*—If the jury find from the evidence that the plaintiff is the owner of the premises situated in a residential section of Baltimore City, and known as No. 1021 North Eutaw street, the same being improved by a dwelling house fronting on Eutaw street, and a smaller dwelling house on rear of said lot, and if they find that the defendant, being owner of the lot adjoining the plaintiff's on the southeast, erected, or caused to be erected thereon, a large building designed for the use of a livery stable, and that the said building has been used as a livery stable since its completion; and if they shall further find that the said stable was so improperly constructed that in the nature of things, by its use as so constructed, the noises produced by the stamping of the horses kept in their stable, and by the clanking of the chains with which they were tied and in other ways as testified to, were of such character and intensity as to materially interfere with the reasonable quiet, repose and comfort of the tenants of the said premises, so that the said premises were rendered unreasonably unfit for the purposes for which they were designed, namely, dwelling houses, and so that the plaintiff's tenants deserted

the said premises, and the plaintiff has lost the rents thereof; then, if the jury find such, their verdict must be for the plaintiff.   (Granted.)

*Plaintiff's Third Prayer.*—If the jury find that Bernard Manion is the owner of the livery stable known as No. 1007 to 1017 North Eutaw street, and that he leased the same to one Rhodes, who subsequently assigned to one Clarence C. West, and that said premises were, at the time of leasing, so constructed that they caused the tenants of the plaintiff's premises, by reason of odors or noises emitted therefrom, serious bodily discomfort, and caused them to leave the premises, and the plaintiff has lost rent thereby, or that by reason of the construction of said stable it must, in the nature of things, produce the aforesaid results by its use, and that said Bernard Manion has received rent therefor, then, whether in or out of possession, he is liable, and their verdict must be for the plaintiff.   (Granted.)

*Plaintiff's Fourth Prayer.*—If the jury find from the testimony that the plaintiff has suffered substantial injury to its property and has lost rent thereby on account of either the noises or the odors as testified to; arising on account of the improper construction of said stable as built, if the jury find that the same was improperly constructed, and in the nature of things by the use of said stable as so constructed, that such noises or odors have ensued, then they must find for the plaintiff, although the business of the livery stable may be a lawful one and one useful to the public, and although the best and most approved appliances and methods may have been used in the conduct and management of said business.   (Granted.)

*Plaintiff's Fifth Prayer.*—If the jury find for the plaintiff, then, in awarding damages, they may consider the interference caused by the defendant with the uses to which the property has been put by the plaintiff, and the measure of damages shall be such loss of rental of the premises as they may find the plaintiff has sustained up to the time of

the bringing of this suit, on the 3rd day of February, 1897. (Granted.)

*Defendant's First Prayer.*—If the jury shall find from the evidence that the stable belonging to the defendant, mentioned in the evidence, was so planned and constructed, as that, when used as a livery stable, with proper prudence, care and caution, it could be so used as that it would not cause such actual physical discomfort to persons living in the property of the plaintiff, of ordinary sensibility, and ordinary tastes and habits, which, in view of the circumstances of the case, it is unreasonable that they should be exposed to ; and shall further find that said stable has not at any time since its construction, been used as a livery stable by the defendant, but after its construction, and before being so used, the agreement of lease and the assignment thereof, offered in evidence, was made, and said stable has been in the use and possession of C. C. West, as assignee of Rhodes under the said lease, from the time said stable was ready for use until the present time, and has been carried on by said West during all of said period of time, then the plaintiff cannot recover in this case, and the verdict of the jury must be for the defendant ; and the defendant is not responsible for any consequences growing out of the careless, improper or incautious use of said stable by said tenant or his employees.   (Granted.)

*Defendant's Second Prayer.*—If the jury shall find from the evidence that with the exercise of proper care it was not necessary for the proper ventilation of said stable that any of the windows in the north wall of the defendant's stable should be left open, then the defendant is not responsible in any way for any consequences in reference to the plaintiff's property caused by the leaving open of said windows ; even although the jury may also find from the evidence that when said stable was built the said windows were so constructed that they would afford light to the stable, and also ventilation if the latter should be needed

for the use of said stable.   (Granted with the words "that with the exercise of proper care" inserted.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, PAGE, ROBERTS and BOYD, JJ. (Oct. 29 and 30, 1897).

*Alfred Jenkins Shriver* and *Julian S. Jones*, for the appellant.

A livery stable is not necessarily or *prima facie* a nuisance, but it becomes so, if it be so improperly constructed or so improperly located, that in its ordinary and natural use it destroys the comfort of persons owning and occupying adjoining premises, or impairs the value of their property.    2.   *Wood on Nuisance,* sec. 594 ; *Pickard* v. *Collins,* 23 Barb. 444 ; *Burditt* v. *Swenson,* 17 Tex. 489 ; *Encly.,* vol. 13, p. 935 ; *Dargan* v. *Waddill,* 9 Iredell (N. C.) 244 ; *Coker* v. *Birge,* 9 Ga. 425 ; *Gifford* v. *Hulett,* 62 Vt. 342 ; *Robinson* v. *Smith,* 7 N. Y. S. 38 ; *Rodenhauser* v. *Craven,* 141 Pa. St. 546.

The rule that a landlord is responsible for injuries resulting from a nuisance arising necessarily from the ordinary and natural uses by a tenant of premises demised, if the uses are such as the premises were adapted and intended for, is established by numerous and well-considered authorities. *Taylor's Landlord and Tenant,* sec. 175 ; 2 *Wood's L. and Tenant,* sec. 536 ; *Owings* v. *Jones,* 9 Md. 108 ; *Fish* v. *Dodge,* 4 Denio, 318 ; *Pichard* v. *Collins,* 23 Barbour, 444 ; *Jackman* v. *Arlington Mills,* 137 Mass. 277 ; *Aldrich* v. *Howard,* 8 R. I. 246 ; *Anderson* v. *Dickie,* 26 How. Rep. 117 ; *Kallis* v. *Shattuck,* 69 Cal. 593 ; *House* v. *Metcalf,* 27 Conn. 631 ; *Grady* v. *Walsner,* 46 Ala. 381 ; *McCarthy* v. *York County Bank,* 74 Me. 315 ; *Allen* v. *Smith,* 76 Me. 335.

When the livery stable was being erected by the defendant in the spring of 1895, fourteen windows, each being about two feet high by three feet wide, were placed in the northwest wall of the stable, so that they face or look out

on the first floor windows and doors and back yards of the plaintiff's Eutaw street and Jordan street houses, and are only about four feet from the first floor windows and doors of the Eutaw street house and about two feet from the first floor windows of the Jordan street house. These stable windows are single sash windows hung on hinges, on the inside, at the top. Each of these windows is provided with a cord and pulley; one end of the cord being attached to the bottom of the sash and the other end after passing through the pulley, which is fixed in the ceiling, hangs down in convenient reach, so that by means of this contrivance, the windows can be opened and shut. ·

Applying the well-settled principles of law as set forth in the authorities above cited to the facts of this case, we respectfully submit: That the defendant (the landlord) is liable to the plaintiff for the nuisance which necessarily arose from the ordinary and natural use of these fourteen windows by his tenant in the way in which they were intended, designed and leased to be used. The plaintiff's first, second, third and fourth prayers were drawn upon this theory. This theory, we respectfully submit, is the only correct one which should have been given to the jury by the Court as the law governing the facts of this case.

The question is simply this: Were the windows used by the tenant in the ordinary and natural way in which they were intended and designed to be used, when the stable was leased to him for the purpose of being used in the ordinary way as constructed? If so, and injury resulted to the plaintiff, then the defendant is liable. The defendant's prayer not only excludes from the consideration of the jury the question as to the ordinary use of the windows in the way in which they were intended to be used, but instructs them that if the opening of the windows was not necessary for the purpose of ventilating the stable, that the defendant is not liable for any consequences arising therefrom. We submit that this instruction is erroneous for the reason that it is too broad. The authorities are uniform to the effect

that where one has erected, so constructed, and then leased a thing so that injury results to another, that the question as to whether or not such injury resulted from the natural and ordinary use as contemplated at the time of the letting, is the chief test of the landlord's liability, and must be the subject of inquiry for the jury.

This case of *Rich* v. *Basterfield*, 56 E. C. L. 805 (decided in 1846), has given rise to a large amount of discussion as to what really was decided by the Court in view of the facts of the case. By some it has been taken to rule that if the lessor erects a thing which becomes a nuisance in the hands of his tenant by the tenant's ordinary use thereof, then the lessor is not liable for injuries resulting. This view of the case has met with only criticism and dissent. By others it has been taken to rule that if the lessor erects a thing which becomes a nuisance in the hands of his tenant by the tenant's use thereof in a manner not contemplated by the lessor when he let, then the lessor is not liable ; but *contra*, if the injuries resulted from the tenant's use, if such use were the ordinary and natural use of the thing. Applying the facts of the case, it is said that the Court first found as a *matter of fact* that the act of the tenant in burning soft coal in the chimney was not the usual and ordinary use, because the chimney had been constructed for the burning of coke, which did not produce the injurious results complained of, and the evidence in the case shows that coke had been used by a former tenant and no ill effects had resulted. In the most recent English case on the subject of the liability of the landlord for injurious acts of his tenants, *Rich* v. *Basterfield* is both criticised and distinguished. *Harris* v. *James*, 45 L. J. Q. B. 545 (decided in 1876).

*Bernard Carter*, for the appellee.

Although the appellee was the owner of the stable which, it is alleged in the declaration, constitutes the nuisance complained of, yet inasmuch as before it was ever used or occu-

pied as a stable, it was leased for a term of five years, which term was still running at the time this suit was begun (and also when it was tried) ; and during all said time, said stable was in the *exclusive* use of the tenant, the appellee is not responsible for any nuisance caused by such use, *unless* the stable as constructed, at the time it was so leased, would, by its use as a stable, *necessarily* cause the nuisance for which this suit is brought. If the stable was so constructed as that, by the exercise of proper care, prudence and caution, its use would not constitute a nuisance, and was in that condition when leased by the appellee, then he is not liable for any nuisance caused by the use of said stable while the tenant was in possession under his lease. This principle is fully recognized and established by the decisions of this Court, as well as by the decisions elsewhere. *Owings* v. *Jones,* 9 Md. 216 ; *Maener* v. *Carroll,* 46 Md. 216 ; *Albert* v. *State, use of Ryan,* 66 Md. 337 ; *State, use of Bashe,* v. *Boyce,* 73 Md. 471; *Rich* v. *Basterfield,* 56 E. C. L. 805 ; *Leonard* v. *Stover,* 115 Mass. 86 ; *Clifford* v. *At. Cotton Mills,* 146 Mass. 47 ; *Gandy* v. *Jubber,* 5 Best & Smith, 87 ; *2 Wood on L. & T.,* pages 1279, 1280, 1282, 1283.

While no principle is better settled than that where a trade or business is carried on in such a manner as to interfere with a reasonable and comfortable enjoyment by another of his property, or which occasions material injury to the property itself, a wrong is done to the neighboring owner, for which an action will lie ; yet all of the authorities hold that the injury must be of a character to diminish materially the value of the property, or seriously interfere with the ordinary comfort and enjoyment of it, such as will entitle the party injured to substantial damages ; and that every one taking up his abode in the city, must expect to encounter the inconveniences and annoyances incident to such community, and he must be taken to have consented to endure such annoyances to a certain extent. And where a nuisance is alleged to exist, the question is whether the nuisance complained of will or does produce such a condi-

tion of things as, in the judgment of reasonable men, is naturally productive of actual physical discomfort to persons of ordinary sensibility, and of ordinary tates and habits, and as, in view of the circumstances of the case, is unreasonable and in derogation of the rights of the party complaining ?   The principles thus stated will be found fully recognized in the following cases : *Adams* v. *Michael,* 38 Md. 123 ; *Dittman and Berger* v. *Repp,* 50 Md. 522 ; *Euler* v. *Sullivan,* 75 Md. 619.

The test whether a livery stable, in active use as such, will constitute a nuisance, is the same as that established by this Court, for determining whether any trade or business will constitute a nuisance ; this test is that stated above in this brief.   Although the stable in question in this suit, as actually conducted by West, the tenant, from the time it was built and occupied, up to the trial in the Court below, *may have* constituted a nuisance, yet if it was so planned and constructed, as that when used as a livery stable, with proper prudence, care and caution, it would *not* constitute a nuisance according to the test for determining whether a nuisance exists as established by this Court, as above stated, then upon the principles adopted by this Court and by the other Courts, as shown in this brief, the appellee is not liable for such nuisance.

Now, although the windows being so constructed that they could be opened, afforded the opportunity to the tenant to open them ; and although they were put in the wall so that they could be opened for ventilation, if the latter was needed for the use of the stable, yet if the jury should find that with the exercise of proper care on the part of the defendant, it was not necessary for the proper ventilation of the stable that any of said windows should be opened, then it would follow that the leaving of them open was an act of negligence on the part of the tenant, if the so leaving them open would result in any such deleterious consequences to the plaintiff's property as the plaintiff had a right to complain of ; and all that the prayer asserts is that if the jury

found the facts hereinbefore mentioned, then the defendant is not responsible in any way for the consequences to the plaintiff's property caused by the leaving open of the windows.    In view of what has already been said, it is respectfully submitted that it is not necessary further to discuss this prayer, to satisfy the Court that it was correctly granted ; it but embodies the principle announced in 46 Md. 216, and the other cases above cited.    At the most, it but enabled the tenant to conduct the stable as to cause a nuisance.    But, in view of the uncontradicted testimony that these windows need never to have been left open, the plaintiff has no one to blame but itself for any discomfort caused by the stable odors, as there is no evidence that the plaintiff any time told the tenant or the defendant that the tenants of the property of the plaintiff were suffering the inconveniences testified to by the witnesses for the plaintiff in this case.    If this had been done no doubt the tenant would have closed the windows.

ROBERTS, J., delivered the opinion of the Court.

This is an action brought to recover damages for a nuisance.    The case was tried before a jury in the Superior Court of Baltimore City, and the verdict and judgment being against the plaintiff, it has taken this appeal.    The appellant (plaintiff below), is the owner of a lot of ground in the city of Baltimore which it purchased prior to March, 1895.    The only improvement upon the lot at the time of its purchase was a double house fronting on North Eutaw street.    Subsequently to the purchase, the appellant built on the lot a small two-story dwelling house fronting on Jordan alley, which extends along the rear of said lot.    The appellee, at the time this suit was brought in the Court below, was the owner of a lot of ground adjoining that of the appellant and extending from Eutaw street to Jordan alley.    Upon this lot he erected a brick stable, which was first occupied in August, 1895.    In July, 1895, the appellee leased the property, the lease to begin on Agust 1st, 1895.    It

has since then been almost continuously used by the lessee as a livery stable wherein a large number of horses were kept; that there are a great number of openings in the northwest wall of said stable on a line of the windows of the first floor of the house of the appellant, through which openings, the declaration charges, offensive gases and odors flow into the house of the appellant rendering it unfit for the use of a dwelling, &c. At the very threshold of this case, it must be noted that the declaration contains no allegation that the stable as constructed constituted a nuisance, or that in its proper use and occupancy it would necessarily become a nuisance. The testimony shows very clearly that the appellee has never at any time since its erection used or had in his possession the stable in question.

With this preliminary statement we will examine the exceptions contained in the record; six of which relate to the admissibility of the proof offered, the other to the granting of the appellee's two prayers. We infer from its treatment in this Court that the first exception was abandoned. It was not pressed upon our attention at the argument and in any event it could avail the appellant nothing, as the question was clearly irrelevant and improper. The second exception was to the refusal of the Court to permit the question to be asked the appellant's president, " Did you notify Mr. Manion that he must not put those windows in the wall next to that property?" Upon objection, the Court refused to allow the question to be put and answered. For what purpose should it have been allowed; it in no respect affected the liability of the appellee. It could make no possible difference whether the appellee was notified or not; by giving the notice, the appellee's liability was neither fixed nor enlarged. The question was therefore immaterial and properly disallowed. The third and fourth exceptions can properly be considered together. We do not perceive that the two letters which are the subject of the third and fourth exceptions are in any sense material to the issues in this case. The letter of the president of the appellant

addressed to the appellee contains no information which the jury should have been permitted to pass upon and is wholly without character as legal evidence in this cause. The letter addressed by the appellant's attorney to the appellee is merely a notification of the intention of the appellant in the event of the failure of the appellee to agree upon an adjustment of their differences. But if either or both of the letters were intended to be notice to the appellee to abate the nuisance, no previous demand was necessary, and therefore these letters were immaterial and the Court committed no error in excluding them from the jury. *Walters* v. *County Commissioners, &c.,* 35 Md. 385; 1 *Taylor on Landlord and Tenant,* sec. 211. What we have said concerning the third exception applies equally to the fifth exception and no further comment need be indulged in here. The sixth exception is taken to the action of the Court in refusing to allow Mr. Snell to answer the following question : " Now, from that examination, can you say whether or not a number of windows in the wall of the stable in which a large number of horses are kept within the space you described, whether or not those windows in their ordinary use, such as windows are usually put to, would create a nuisance?" By the question propounded to Mr. Snell it was sought to make of him an expert, instead of stating the facts within his knowledge and allowing the jury, as was their duty, to pass upon those facts and draw their own inferences. This Court has in a recent case said, "it was an unsafe practice in the admission of testimony to allow witnesses to speak as experts unless the Court is well satisfied that they possess the requisite qualifications ; not alone on this account, but the effect of such testimony is more difficult to estimate, from the fact that undue importance not infrequently attaches to it and gives to it an influence upon the minds of a jury to which it is not fairly or reasonably entitled." *Dashiel* v. *Griffith,* 84 Md. 377. JUDGE MILLER delivering the opinion of this Court in *Stumore* v. *Shaw,* 68 Md. 19, said: " There is a general concurrence of authority and decisions

in support of the proposition, that expert testimony is not admissible upon a question which the Court or jury can themselves decide upon the facts; or stated in other words, if the relation of facts and their probable results can be determined without special skill or study, the facts themselves must be given in evidence, and the conclusions or inferences must be drawn by the jury." To the same effect is the case of the *Balto. & Y. T. Road* v. *Leonhardt*, 66 Md. 78, and also the *Railroad Company* v. *Schultz*, 43 Ohio St. Repts. 292.

We come now to the consideration of the prayers. The appellant offered five prayers, all of which were granted by the Court. The only instructions to which exceptions have been reserved are the two prayers offered by the appellee and granted by the Court. The first of these prayers contains the proposition, that if the jury find that the stable in controversy here was so constructed that when used for livery purposes, with proper care and caution, it could be so used as not to occasion any of the objections set out in the prayer, that is to say, would not fairly and reasonably cause such actual physical discomfort to persons living in the property of the appellant, of ordinary sensibility and ordinary tastes and habits, which under the decisions of this Court constitutes a nuisance, and shall further find that said stable has not, at any time since its erection, been used by the appellee as a livery stable but has always been in the possession of the tenant under the lease from the appellee, then the appellant is not entitled to recover; and further, that the appellee is not responsible for any consequences growing out of the careless, improper or incautious use of said stable by said tenant, or his employees. The authorities which hold that a livery stable in a city is not *per se* a nuisance, are so numerous that it would serve no useful purpose to repeat them. It may, however, be taken as a concession that such is the well-established rule of law about which no controversy can be reasonably expected to arise. And whilst this is unquestionably true it is equally

clear that a stable, whether used for livery purposes or for private convenience, may sometimes become a very great nuisance and source of discomfort that the Courts would not fail to grant relief. But the fact just noted, that a livery stable is not necessarily *prima facie* a nuisance, suggests caution in dealing with the rights of the owners or occupants of livery stable property. The Court in *Dargan* v. *Waddill*, 31 N. C. 244, said: "It is true that a stable in a town is not, like a slaughter-house or a stye, necessarily and *prima facie* a nuisance. There must be places in towns for keeping the horses of people living in them, or resorting thither; and if they do not annoy others, they are both harmless and useful erections. But, on the contrary, if they are so built, or kept, or so used as to destroy the comfort of persons owning and occupying adjoining premises, and impair their value as places of habitation, stables do thereby become nuisances." It cannot be denied that a livery stable in a town adjacent to buildings occupied as private residences, is under any circumstances a matter of some inconvenience and annoyance; and must more or less affect the comfort of the occupants as well as diminish the value of the property for the purpose of habitation. But this is equally true of various other erections that might be mentioned which are indispensable, and which do and must exist in all towns. *Kirkman* v. *Handy*, 11 Humph. 406; *Shiras* v. *Olinger*, 50 Iowa, 571; *Flint* v. *Russell*, 5 Dillon, Ct. Ct. Rep. 151.

In conflict with the law settled and determined by this Court in numerous cases, the appellant contends that the last proposition embodied in the defendant's first prayer which we have been considering, is not supported by the authorities quoted to sustain it. The case of *Rich* v. *Basterfield*, 56 E. C. Law, 805 (4 Manning, G. & Scott, 782), has been subjected to a most critical examination and an effort has been made to show that its authority has been doubted and impaired. The case has been recognized and practically and substantially supports the opinion of this

Court in the following cases:   In *Owings* v. *Jones*, 9 Md.
117, MR. CH. J. LE GRAND delivering the opinion of the
Court, said:   " A careful examination of the authorities
satisfies us there is no foundation for either of the prayers.
We have consulted them in the original reports, but inas-
much as they are very clearly brought together and dis-
cussed, both by Court and counsel, in the case of *Rich* v.
*Basterfield*, 4 Manning, Granger & Scott, (56 Eng. Com.
Law Rep. 784), we will content ourselves with a reference
to that case.   After a full review of all the cases, and that
too after a second argument, we understand the Court to
deduce, at least, the two following principles from the
numerous adjudications to which reference is had:   First.
That where property is demised, and at the time of the de-
mise is not a nuisance, and becomes so only by the act of
the tenant while in his possession, and injury happens dur-
ing such possession, the owner is not liable; but second.
That where the owner leases premises which are a nuisance,
or must in the nature of things become so by their user,
and receives rent, then, whether in or out of possession, he
is liable."   In *Maenner* v. *Carroll*, 46 Md. 216, MR. JUSTICE
ALVEY delivering the opinion of the Court, held that, " If a
landlord demise premises which are not in themselves a
nuisance, but may or may not become such, according to
the manner in which they are used by the tenant, the land-
lord will not be liable for a nuisance created on the prem-
ises by the tenant.   He is not responsible for enabling the
tenant to commit a nuisance, if the latter should think
proper to do so.   *Owings* v. *Jones*, 9 Md. 108; *Rich* v.
*Basterfield*, 4 C. B. 805, (56 E. C. L. 782.)   In such case,
it may be said, in one sense, that the landlord permitted the
tenant to create the nuisance, but not in such sense as to
render him liable."   In accordance with the views just
stated is *Albert* v. *State, use of Ryan*, 66 Md. 325.   There-
fore, whatever may be the standing of *Rich* v. *Basterfield*
elsewhere, it must in this State be regarded as a recognized
and well-established authority.   We think the Court was

clearly right in the granting of the appellee's first prayer. As to the appellee's second prayer, we find it differs substantially but little from the principles announced in the first prayer.  What we said in regard to the first prayer is in great measure applicable to the second prayer.  We have failed to discover such inconsistency in the prayers of the appellant when contrasted with those of the appellee as in any manner tends to mislead the jury, as contended by the appellant.  The second prayer pointedly calls the attention of the jury to the effect of the windows in affording light to the stable, and also the ventilation thereof if the same should be required.  If in the construction of the stable the landlord made these windows, with the possible effect asserted, in the language of 46 Md. 216, "he is not responsible for enabling the tenant to commit a nuisance, if the latter should think proper to do so.  In such case, it may be said in one sense that the landlord permitted the tenant to create a nuisance, but not in the sense to make him liable."  Finding no error in the ruling of the Court, it follows from what we have said that the judgment must be affirmed.

*Judgment affirmed with costs.*

(Decided January 5th, 1898).