**SPENCER CHAPEL METHODIST EPISCOPAL CHURCH et al. v. BROGAN et al.**

No. 15201—Opinion Filed Oct. 21, 1924.

**Nuisance—Injunction Against Reconstruction of Negro Church—Lack of Cause of Action.**

A negro church organization bought property in that part of a city occupied exclusively by negroes and built a church building thereon and used it for religious worship and social gatherings until the church was destroyed by fire, and, thereafter, continued to hold their services in a small building on the property and had let a contract for building a new church, when, at the suit of white people who had bought property near the church property subsequent to the building of the old church, the organization was enjoined from constructing a new church on the site of the old, upon the ground that it would constitute a nuisance and thereby decrease the salable value of their property. Held, such judgment is contrary to law, equity, and good conscience and will be reversed.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Muskogee County; Enloe v. Vernor, Judge.

Action by J. M. Brogan et al. against Spencer Methodist Episcopal Church et al. Judgment for plaintiffs, and defendants appeal. Reversed, with directions to dismiss the action.

Bruce & Brewer, J. B. Smith, and Jacob J. Jones, for plaintiffs in error.

W. W. Momyer, for defendants in error.

Opinion by RAY, C. This suit is by J. M. Brogan and 12 others against Spencer Chapel Methodist Episcopal Church and its trustees to enjoin them from building a negro church on the north 50 feet of lot 7, and south 70 feet of lot 6, block 236, in the city of Muskogee, upon the ground that they were attempting to build a negro church in a white community, which would constitute a nuisance, and thereby decrease the salable value of their property. A temporary injunction was

granted and on final hearing made perpetual.

A number of errors are assigned, but we think the case may and should be disposed of on its merits. The evidence shows that the Spencer Chapel Methodist Church bought the property and built a brick church thereon in 1903 or 1904. At the time the property was bought and the church built there were no white people living in that immediate vicinity. From the time the brick church was built, in 1903 or 1904, it was used as a place of worship until it was destroyed by fire, and since that time a small building on the lot has continually been used for that purpose. At the time this suit was commenced a contract had been let to build what the trustees call a modern church building at a cost of approximately $25.000. It is not sought to enjoin the defendants from continuing their worship in the small building on the property, but to enjoin them from building the new church. It appears that this church property is near the southeast corner of the block facing the east on 7th street. The adjoining block on the east is owned and occupied by white people. The block immediately south is occupied by both negroes and whites, the negroes being in the majority. The block cornering on the southwest is occupied exclusively by negroes. The blocks immediately west and north are occupied by both whites and negroes, the whites being in the majority. In block 236, where the church property is located, the negroes own and occupy 26 residences, while the white people own and occupy 12 residences On the east side of the block, north of the church property and fronting on 7th street, there are only two negro residences, while the other lots fronting on that street are occupied by white people. While some of the witnesses for the plaintiffs testified that the church was sought to be built in a white community, it is clear that they referred to the property east of 7th street, and that part of the particular block where the church is located fronting on 7th street, north of the alley. We are led to this conclusion by the fact that a number of witnesses for the defendants gave the names of the residents in the block, both white and black, and told on what particular lot each family resided. No evidence was offered to contradict these statements.

Of the 13 parties plaintiff only four were produced as witnesses. The rights and interests of the nine parties plaintiff who did not testify are not made to appear by the evidence. Two of the parties plaintiff, J. M. Brogan and J. W. Boen, live in the same block where the church property is

located. Mr. Brogan lives 250 or 300 feet north, his property fronting on 7th street. He bought the property and established his residence thereon in 1905, after the brick church was built. At that time, according to his testimony, all the residences between his property and the church were occupied by negroes except one. He had been disturbed by the noise and shouting at the church, and by those attending church congregating on the sidewalks in the street so that when he passed that way he was often compelled to go around through the parking. He had not heard any shouting for about 18 months. J. W. Boen bought his property in 1918. At that time only negroes lived between his residence and the church. At the time of the trial they were all white people except two negro families. His complaint was that they congregated in pretty big numbers and "last fall had some kind of supper there nearly every evening; they were quite noisy; they congregated on the sidewalks and were having a big time all around there." W. H. Stoddard lives across the street east about 60 feet north of the church. When asked to describe the conditions for the last ten years, his answer was that there had been quite a commotion there very frequently. The congregations were of various kinds and made considerable noise day and night several times a week. H. Kirschner bought property across the street from the church in 1905 and established his residence there. The noise at the church so disturbed his family that he moved his house, in 1907 or 1908, to front on the next street east. He has not been disturbed since he moved his house. A number of other witnesses testified as to the congregation at times filling the sidewalks at their frequent church services and other meetings. The evidence of plaintiffs was principally directed to showing that the construction of the church would decrease the salable value of the property in that community by making it impossible to sell to white people as residence property.

Plaintiffs, defendants in error, in their brief say:

"The evidence discloses the fact that the property owners, defendants in error, are in no wise prejudiced against the negro race; that objections to the building of this church are not made solely for the reason that it is a negro church, but discloses proof that the defendants in error are opposed to construction of any church on said lot, either by negroes or whites, for the reason that it would destroy the inalienable rights of the defendants in error to enjoy the peace and quietude of their homes."

This statement is sustained by the testimony of the four parties plaintiff who testified in the case. No case has been called to our attention where it has ever been held that a church is a nuisance. The evidence in this case shows that this church has been conducted in no disorderly way; in fact it is not sought to enjoin this church from conducting its services as they have been conducted in the past. The sole object is to prevent the construction of the new church, and the reason therefor is made clear by the evidence. The plaintiffs have bought property and established their residences in what was a negro community at the time the brick church was built. If this congregation should be prohibited from constructing the church building no doubt the negro population in that particular community would gradually grow less. The negro is of a social and religious nature. Their social gatherings are usually at the church. The church is their social or community center. If they are required to build their church in some other community no doubt their population will trend in that direction. This appears to be the theory of the plaintiffs. No doubt if such should be the result, and the plaintiffs permitted to sell their property to white people for residence purposes, they would derive a greater profit from their investments. They do not seek to enjoin the defendants from holding their church services and other social gatherings with the incident noise complained of, but seek only to enjoin the building of the church upon the ground that it will depreciate the salable value of the property. A court of equity will not lend its aid to such an undertaking. These plaintiffs and all their witnesses bought their property in the vicinity of this church after the defendants had bought the property and built their church, knowing it was being used and would be used for that particular purpose. As the plaintiff Kirschner expressed it, he bought it with his "eyes open." Plaintiffs offered evidence to show, and argue in their brief, that they have tried to buy this property. but have failed. They say in their brief that the evidence discloses that the defendants in error have used all reasonable means to purchase the property. offering therefor a price far in excess of its true value. The evidence shows that they are willing to pay the true value of the property provided they are permitted to say what that true value is. The contention that it is an effort on the part of the trustees to build a negro church in a white community is not sustained by the evidence, but the evidence does show that it is an attempt upon the part of the plaintiffs to change what was a negro community at the time the original church was built, and for a long time thereafter, into a white community, for the purpose of increasing the salable value of their property.

The judgment is contrary to law, equity, and good conscience, and should be reversed, with directions to dismiss the action.

By the Court: It is so ordered.