## MURPHY v. CUPP.

Opinion delivered October 6, 1930.

C. H. Moses, W. R. Donham and W. C. Rodgers, for appellant.

Feazel & Steel, for appellee.

MEHAFFY, J. This suit was begun by A. B. Cupp and others against the First Baptist Church of Nashville, Arkansas, and Pat Murphy, its pastor, to restrain them from erecting a church tabernacle on lots 13, 14 and 15

in block 126, Nashville, Arkansas. There was a city ordinance of the city of Nashville Arkansas, reading as follows:

"Be it ordained by the council of the city of Nashville, Arkansas:

"Section I. That it being deemed in the interest of the public safety, health and morals of the city and for the protection of said city that all buildings of whatsoever character to be hereafter erected in said city and any and all alterations of buildings now or hereafter erected by any person or corporation, shall be built, altered or changed subject to and only when approved by the city council of said city of Nashville.

"Section II. Any owner or person erecting any buildings or making any alterations or additions to any buildings now or hereafter erected shall, before proceeding with such building, addition, alteration or change of plans of work, apply to the recorder or city clerk for a written permit to erect, alter or change any structure, regardless of material of which such building is composed; provided that any changes or alterations costing less than $100 may be made without such permit."

The balance of the ordinance merely provides for the arrest and punishment of persons violating its provisions.

It was alleged that the appellees had long been residents of Nashville and owned their homes on the west and south side of block 126; that the Baptist Church owned and occupied a large and commodious church building in said block facing east on Main Street; that, excepting this church, all the buildings are used exclusively for residential purposes. That appellees have built expensive homes in said block with a view to securing comfort and quiet therein. That the Baptist Church and its pastor, Pat Murphy, have purchased lots 13, 14 and 15 in said block with the avowed purpose of erecting thereon an open tabernacle in close proximity to appellees' residences. That the building material is already

on said lots. The tabernacle is to be 120 feet long and 70 feet wide with composition roof, set upon upright posts at intervals around the structure to support the roof. About 20 feet off the west end is to be used as a rostrum and will be boxed. The balance of said structure will be with open woven wire except from the ground to about three feet up will be wainscoting. It was alleged that the erection and operation of said tabernacle would materially interfere with the enjoyment by appellees of their homes; that they would be greatly annoyed and harassed by continuous and successive loud noises during the holding of meetings; that said noises are necessarily incidental to conducting meetings in an open tabernacle in such close proximity to their homes; that there is no parking space around the tabernacle except the public streets surrounding the block; that a great many people will necessarily congregate at all of said public meetings, and that the stopping and starting of cars on said streets will create loud and disturbing noises which will disturb the comfort and rest of appellees and their families, and will greatly depreciate the value of their property as homes and will render the occupation of them uncomfortable and the loud talking and speaking and singing, which are necessarily incidental to the holding of said meetings in the tabernacle, will disturb their comfort and quiet to such an extent as to be a nuisance and will cause irreparable damage to appellees in the enjoyment of their homes and in reducing the value of their property; that there is no necessity for the tabernacle at the place where it is to be built, for religious purposes, because the appellants already own a large and commodious church house; that it is unnecessary to erect the structure in the locality close to appellees' homes because there are ample and more isolated places in Nashville where the tabernacle might be built. That appellees have endeavored to persuade appellants to select a more isolated location, but they have refused all overtures in that direction; that appellants applied

to the city council for permit to build the tabernacle, and that the city council refused the application; that, regardless of this, the appellants were going ahead with the construction of the building. It was further alleged that the appellees had no adequate remedy at law.

Appellants filed answer in which they admitted that they had the building described by appellees under contemplation for religious purposes, but they denied each of the statements of appellees; denied that the structure was to be used for all sorts of public speakings, concerts, shows and entertainments, but alleged that it was to be used only for religious purposes and perhaps a few public functions such as school exercises and other purposes of a dignified educational and social nature. They also said it was not to be used for any entertainments which are not had in other churches of the city, and under no circumstances was it to be used for any kind of exercises or entertainment which any reasonable person could take exceptions to; that it would not be used for other than strictly religious purposes more than two or three times a year, and then usually in the daytime; that they do not tolerate any entertainments or exercises which would not be tolerated by other churches of the city, and that they will not permit any kind of exercises or meetings except such as are dignified, moral and useful; that the object of the structure and contemplated services therein is to further improve the morals and religion of the people of the locality, just as this object is maintained by other churches in Nashville. They denied that they would materially injure appellees in any way. They alleged that the building was neither erected nor occupied and no services of any kind or use thereof had been had, and that the appellees could not in any event be entitled to any relief until the building had been occupied and used for some purpose which the law condemns as a nuisance. The Baptist Church is about a block from the Methodist and Christian churches and all of these churches are in the residence section of the city. There was a decree

restraining and enjoining appellants from proceeding with the construction of the tabernacle. This appeal is prosecuted to reverse the decree of the chancery court.

The character of the building, its location and dimensions are not in dispute. In fact, there is no claim that the building itself will be a nuisance, but the controversy is as to whether the use of it, as contended by appellees will be a nuisance by decreasing the value of appellees' property or by the annoyance and inconvenience caused by automobiles, loud preaching and singing and disturbances of this kind. A number of witnesses for appellees testified that the tabernacle would practically ruin their homes or would decrease the value of their homes very considerably.

J. S. Hopkins, a witness for appellees, testified that the tabernacle being built would decrease the value of the Cupp, Hutchinson, Crutchfield and Rector property; that it would be very unpleasant for appellees during meeting hours. He is the family physician of appellees, and testified that in case of sickness it would be very bad on some of them; that some of them were of a very nervous temperament. He thought it would decrease the value of the Crutchfield home 50 per cent. Did not think he could put up with the continuous fuss and nuisance they would have there during meetings, that the stopping and starting and honking of horns of automobiles used in attending the services of the tabernacle would be annoying. He testified also, however, that the starting and stopping of cars is incidental to every church in town, and that an automobile would make as much fuss starting and stopping in front of a brick church as it would in front of a tabernacle.

T. A. Hutchinson, one of appellees, owns a home nearly west of the Baptist Church. The Rector estate has property right up against the tabernacle, suitable for residential property. Witness' home is 75 or 80 feet from the tabernacle, and the Crutchfield home is 20 or 25 feet from the tabernacle. Witness' home cost $10,000

five years ago. The Baptist Church is a nice, brick building and probably seats more people than any church in town; endeavored to get Murphy, the pastor, to build the tabernacle elsewhere, but he would not do it; attended the meeting of council when Murphy asked for permit to build the tabernacle, and Murphy at the time told the kind of entertainment the Baptist Church would indorse, anything which was moral; he mentioned a good many things they would use the building for. Witness objected to the construction of the building because there is more noise and confusion around a tabernacle than around a church. People do not reverence a tabernacle like they do a church, and the noise carries much further in the open air than in a church. The tabernacle would destroy the Crutchfield property. Witness testified that four years ago there was a meeting held there between the Baptist Church and Cupp's residence where they preached two or three weeks, had music and out-of-door services; knows nothing about what the Baptist Church is going to have in the tabernacle except what Mr. Murphy said; understood they would sometime have 3 o'clock services when witness wanted to sleep. The loud noises he complained of referred to the styles of entertainment which Mr. Murphy said the tabernacle would be used for.

J. R. Hill, a real estate dealer, testified that the Cupp house cost $12,500 and was built in 1910. That he was familiar with land values in Nashville, and thought the construction of the tabernacle would impair the value of the property of appellees; thought it would impair the value of the Hutchinson property 50 per cent. and the Cupp property 33 1/3 per cent. and would almost destroy the value of the Rector estate; thought the contemplated use of the tabernacle would be very annoying, but he did not know what the Baptist congregation expected to use the tabernacle for.

A. B. Cupp, E. L. Crutchfield, W. A. Beauchamp, D. A. Hutchinson, W. W. Wilson, Barney Thompson and J. W. Bishop all testified to substantially the same facts

with reference to the noises and damage as witness T. A. Hutchinson.

A number of witnesses testified for appellants that there would be no damage to the property or to the persons by reason of the building and use of the tabernacle. The evidence also showed that Crutchfield offered to sell a portion of his property to the Baptist Church for the purpose of erecting a tabernacle which would have been closer to him than the one now building, and did not say anything about any objection or annoyance. The evidence showed that the appellants applied to the city council of Nashville for a permit, and that this permit was denied. It is unnecessary to set out the testimony of all the witnesses. The appellees' witnesses testified to the noise, and that this would annoy the appellees in their homes and would decrease the value of the property. The witnesses for appellants testified that there would be no annoyance to the appellees and no decrease in the value of the property by reason of the building of the tabernacle.

Appellee's first contention is that the ordinance is valid, and that the action of the city council in denying the permit ought to be sustained. In other words, the injunction ought to be granted if the council under a valid ordinance did not give a permit to erect the building.

We think it wholly immaterial in this case whether the ordinance is valid or not, because, if valid, the mere refusal of a permit to erect the building by the city council would not enable private parties to maintain a suit to prevent its erection. It is generally held that a person violating a city ordinance or a State statute cannot be restrained from doing so by the courts, although the ordinance or statute might be valid. If it constitutes a crime as this ordinance does, then the city could prosecute if the ordinance was valid and punish the person who violated it. The city itself, however, could not maintain a suit for injunction merely for violating an ordinance,

but they could only do so provided the erection of the building or its use constituted a nuisance.

"The mere fact that the structures are or will be erected and maintained without the required statutory license does not make them outlaws, to be lawfully assailed and destroyed by any one, or abated at the private suit of any person. Indeed the statute does not declare them to be a nuisance in law. An equity court will not, at the suit of a private party restrain the erection of a building not in fact a nuisance, merely because its erection is forbidden by statute or ordinance." *Whitmore* v. *Brown,* 102 Me. 47, 65 Atl. 516; 120 A. S. R. 454; *Heffner* v. *N. Y. Taxicab Co.,* 130 N. Y. S. 710.

"But the mere fact that the proposed·act of the defendants is in violation of the ordinances will not enable the plaintiffs to sustain their bill. A bill in equity cannot ordinarily be sustained for the mere violation of a municipal ordinance. The threatened act of violence must amount to a nuisance if done." *Houlton* v. *Titcomb,* 102 Me. 272, 66 Atl. 733, 10 L. R. A. (N. S.) 580; *Berger* v. *Smith,* 160 N. C. 205, 75 S. E. 1098.

If the structure or the use of it is a nuisance under the law, then a court of equity would have a right to restrain the parties whether the acts were violations of ordinances or statutes or not, and such suit could be maintained by a private person where his property rights were invaded and where the use to which the building was to be put would so interfere with the rights of others by reason of the noise as to constitute a nuisance, or if the acts complained of decreased the value of the property or materially affected the comfort and convenience of the parties, but simply because it is illegal or a violation of an ordinance or statute does not justify a court of equity in issuing a restraining order.

This court has said: "Something more than the threatened commission of an offense against the law of the land is necessary to call into exercise the injunctive powers of the court. There must be some interference,

actual or threatened, with property rights of a pecuniary nature; but when such interferences appear, the jurisdiction of a court of equity arises, and it is not destroyed by the fact that they were accompanied by or are themselves violators of the criminal law." *State* v. *Vaughan*, 81 Ark. 117, 98 S. W. 685, 7 L. R. A. N. S. 899, 118 Am. St. 29, 11 Ann. Cas. 277. So, if the erection and maintenance of a building are, or its use constituted, a nuisance, then it would be wholly immaterial whether the acts were in violation of law or not, so far as a suit by private persons is concerned.

The case of *Bickley* v. *Morgan Utilities Company, Inc.*, 173 Ark. 1038, 294 S. W. 38, is relied on as supporting the decree in this case. The undisputed testimony in the case referred to showed that the defendants in that case were operating or intending to operate an ice factory. The building there was a business building, the manufacture of ice was the business to be engaged in, and the ice factory was located in a strictly residential district, and the evidence in that case also showed that the brick wall of the ice plant was within six feet of the bedroom window of one of the parties and that they left a big window on the side next to his property. There are many facts in the Bickley case which distinguish it from this case. We said in that case: "No definite rule can be given to govern all cases, but each case must depend on the particular circumstances which characterize it, and it is proper to consider the nature of the business, the kind of annoyance, the location, the surroundings, and all the attending circumstances." The law of nuisance is discussed at length in that case, and numbers of authorities reviewed, and it would serve no useful purpose to review them here. "The maxim, 'Use your own property so as not to injure another,' is peculiarly applicable in nuisance cases. If one does an act in itself lawful, which yet being done in that place necessarily tends to the damage of another's property, it is a nuisance, for it is incumbent upon him to find some other place to do that act

where it will be less offensive. * * * That is a nuisance which annoys and disturbs one in possession of his property rendering its ordinary use or occupation physically uncomfortable for him. For such annoyance and discomfort the courts of law will afford redress by giving damages against the wrongdoer, and when the causes of annoyance and discomfort are continuous, courts of equity will interfere and restrain the nuisance." *Yates* v. *Mo. Pac. Rd. Co.*, 168 Ark. 170, 269 S. W. 353, 38 A. L. R. 1434; *Bickley* v. *Morgan Utilities Co., Inc.*, 173 Ark. 1038, 294 S. W. 38.

There are many annoyances in the very nature of things which will not be restrained. The evidence in this case shows without dispute that the tabernacle, when built, will be occupied a very short part of the time, that nothing will be done except those things tolerated by all the churches. Certainly there can be nothing in the noise of automobiles, because the undisputed evidence shows that the entire parking space about where the tabernacle is located is used all the time now, and, as one of the witnesses said, the noises made by the automobiles will not be any greater in stopping and starting at the tabernacle than they will at the church or elsewhere.

The West Virginia court, after discussing the common law of nuisance and remedies at law, and stating that every one had a right to use his own property and do with it as he pleased, stated that his neighbor has the same right over his own property, and that from this results the rule that it is the duty of one to so use his own property as not to injure another, and the court said: "But this duty must be taken with qualifications, for in the nature of things and of society it is not reasonable that every annoyance should constitute an injury such as the law will remove or prevent. One may therefore make a reasonable use of his right though it may create some annoyance or inconvenience to his neighbor." *Powell* v. *Bentley*, 34 W. Va. 804, 12 S. E. 1087, 12 L. R. A. 53.

In discussing the question of nuisance and of a livery stable constituting a nuisance, the Maryland court said: "It is true that a stable in a town is not like a slaughter house or a sty, necessarily and *prima facie* a nuisance. There must be places in town for keeping horses of people living in them or resorting thither; and if they do not annoy others they are both harmless and useful erections. But, on the contrary, if they are so built or kept or so used as to destroy the comfort of persons owning and occupying adjoining premises and impair their value as places of habitation, stables thereby become nuisances. It cannot be denied that a livery stable in a town adjacent to buildings occupied as private residences is under any circumstances a matter of some inconvenience and annoyance; and must more or less affect the comfort of the occupants as well as diminish the value of the property for the purpose of habitation. But this is equally true of various other erections that might be mentioned which are indispensable and which do and must exist in all towns." *Bank* v. *Manyon*, 87 Md. 68, 39 S. W. 90.

There may be some inconvenience and annoyance about a church or tabernacle in a city or town, and, if so, they would of course more or less on occasions affect the comfort of the occupants and might diminish the value of the property as residence, but certainly all will agree that church buildings and churches are indispensable in cities and towns and they are usually, if not always, in the residence districts. Factories are usually, if not always, built in the business districts. Churches are built usually in the residential districts, and the evidence in this case does not show that there will be any very great annoyance. It is urged that the noise made by automobiles will be very annoying, and that this will decrease the value of the property for residences. But the witness who testified to this admitted that near the place where the tabernacle is to be built, the parking space is already filled with automobiles; they doubtless make all the noise and cause all the inconvenience now that they

will when the tabernacle is in use, so that inconvenience from the noise of automobiles is not shown to be any greater than it would be without the tabernacle. It is contended, however, that the loud preaching and loud singing will annoy the people. This might be some annoyance occasionally, but since the preaching and singing would be as loud in the church building as in the tabernacle building, we do not think this noise would increase the inconvenience of the persons living close to the tabernacle. It is true noises in the open air might be heard somewhat further, but the services to be held in the tabernacle will usually be in the summer, especially the preaching and singing complained about, and in the summer time the windows of the church are all open and the singing and preaching can be heard anyway. Besides that, we think that churches and tabernacles like the one proposed to be constructed here, should be constructed, occupied and used, even if at the time of their use there is some inconvenience and annoyance. It is wholly different from an ice factory or any other factory. Every one knows that the churches are built in cities and towns near residences, and they know that there may be some inconvenience and annoyance by the use of them. The witnesses for appellees testified that they did not know anything about what use will be made of the structure when completed except what Mr. Murphy said, and according to his testimony there will be no very great inconvenience, but this suit is to restrain the erection of the building, and no one claims that the building itself would be a nuisance or would damage their property or inconvenience them, therefore, if the noise and inconvenience will be such as to annoy the people, that use of the tabernacle might be restrained but certainly not the erection of the building. In other words, if the tabernacle was used for entertainments and shows and things which would be immoral and annoy the inhabitants or decrease the value of their property, this use of it might become a nuisance, and, if it does it may then be re-

strained, but there is no evidence in this case that anything of that kind will be done except the witnesses testified that they understood from Mr. Murphy that they would have basket ball games and other entertainments of that kind, but the evidence shows that they do not contemplate anything of the kind.

"Where the claim to relief is based upon the use which is to be made of a lawful erection, the court will ordinarily refuse to enjoin the construction or completion of the erection; but in such case the defendant, if he proceeds, does so at his peril and is liable to an injunction or an action of damages if such use results in a nuisance. If a building of itself will be a nuisance, its erection may of course be enjoined." 21 Cyc. 708.

There is in this case, as we have said, no claim that the building itself will be a nuisance, but it is the use of the building complained about.

The rule is well settled that no injunction will be issued in advance of the structure unless it be certain that the same will constitute a nuisance. The Texas court said: "That a church is not a nuisance *per se* would seem to be a self-evident proposition. For that reason the trial court did not err in denying the temporary writ. * * * A church building is as lawful as any other structure. It is not only lawful but essential to our Christian civilization, and will be given the same protection of the law as is afforded the residence for the family or the place for exercising the pursuit of one's lawful business. It is not, however, above the law. Like any other edifice or structure, however lawful in purpose and use ordinarily, it may become unlawful. The place of its location and the time and manner of its use may be such under the circumstances as to constitute that interference with the rights of others as to become in law a nuisance abatable as such. Whether such a condition has arisen is of course a question of fact, triable as any other fact where witnesses may be heard and a verdict had. We are not called upon to express any views as to the applicability

of the common law of nuisances to a case like this. The principles themselves are as virile as ever, but their application in a given case are necessarily affected by our changed conditions due to a complex and advanced civilization. That use which will be enjoined as a nuisance is not every hurt which is inflicted upon another, but must be an unreasonable one under all the circumstances." *Waggoner* v. *Floral Heights Baptist Church,* 116 Texas 187, 288 S. W. 129; *Spencer Chapel M. E. Church* v. *Brogan,* 104 Okla. 123, 231 Pac. R. 1074.

It is common knowledge that we have community buildings all over the State, buildings near residences where educational and social gatherings are had, and there is necessarily some annoyance and inconvenience from the use of these buildings. As we have already said, churches in cities and towns are indispensable. Very few people, if any at all, would be willing to have them put outside of the residential districts in cities and towns, and the annoyance and inconvenience from living close to a church where services are had is not such as to entitle one to an injunction unless, after the erection of the building, the use of it is such as to become a nuisance.

"The erection of a building to be used for a certain business will not be restrained on the ground of anticipating nuisance therefrom where it is not necessarily a nuisance but may become one under some circumstances. The anticipated injury being contingent and possible only, the court will refrain from interfering." Joyce on Nuisances, p. 226. Noise, in order to entitle one to an injunction, must be such as to produce a substantial injury, and the annoyance must be such as to injure or annoy a normal person. Of course, it may be a nuisance merely by decreasing the value of the property, but, from the evidence in this case it appears that all the annoyance and injury is anticipated and may never occur.

We have reached the conclusion that the evidence is insufficient to entitle appellees to an injunction, and the decree is therefore reversed, and the cause remanded with directions to dismiss the complaint.