MAGNESS *v.* SELLERS.

4-6210 147 S. W. 2d 1008

Opinion delivered February 24, 1941.

*Denver Dudley, J. R. Pugh* and *Roy Pugh, Jr.,* for appellant.

*C. B. Nance* and *Giles Dearing,* for appellee.

*W. B. Magness, amicus curiae.*

SMITH, J. The testimony in this case is abundantly sufficient to support the finding that appellant erected a cotton gin in a residential portion of the city of Earle. When it appeared that he proposed to do so, owners of residences in the neighborhood prepared a petition of protest and it is certain that appellant knew, before erecting the gin, that residential property owners were opposed, indeed, certain of them filed suit in the chancery court to prevent the erection of the gin on the proposed location. The chancellor refused a temporary restraining order, but, after doing so, discovered that he was disqualified on account of relationship to the appellant, a fact previously unknown to him. No further action was taken, and appellant proceeded with the erection of the gin, and finished it shortly after the 1938 ginning season opened. Later a number of residents filed a second suit seeking to restrain the operation of the gin on the ground that its operation constituted a nuisance. Soon after the second suit was filed in the chancery court, appellee filed suit in the circuit court for damages, in which he alleged that the value of his property for residential purposes had been destroyed by the gin, the allegation being that the gin was so operated as to constitute a nuisance. There was a verdict and judgment for $700 in favor of appellee at the trial in the circuit court, from which is this appeal.

The testimony on behalf of appellee was to the effect that the adjacent property is desirable for residential purposes, and was so exclusively used before the erection of the gin. Appellee's home is located on the first lot west of the gin, and is about sixty feet from it, and there is no intervening residence or other structure between the gin and appellee's residence. The gin was erected on lots where there had once been a retail lumber shed, but there was no other business property in the

immediate vicinity, and the witnesses for appellee testified that the shed had caused no annoyance.

A number of witnesses owning property in the vicinity of the gin testified that it was a source of constant annoyance in the ginning season. During the height of the ginning season the gin operated on a 24-hour schedule. Persons congregated about the gin at all hours of the day and night, and much noise was made by the numerous persons whose wagons were waiting to be unloaded. There was a vibration from the operation of the gin which was annoying, and electric lights were burned when the gin operated at night.

It was shown that during one season the gin caught fire forty-six times, and was a constant fire hazard. Appellee testified that on this account his insurance was canceled, and he had been unable to obtain additional insurance.

The testimony in appellee's behalf is to the effect that on account of the proximity of the residence to the gin its roof is covered with flying lint and the dust and mote from the gin penetrates the windows and the doors when they are open, and settles on the walls of the rooms and the furniture in the house. The lint settles in the meshes of the screens of the windows and doors, and darkens the house by excluding the light, and it is necessary to keep the windows down and the doors closed, and this excludes the air. It was shown that flying lint cotton adhered to a wire fence between appellee's residence and the gin, and that this lint ignited and burned the fence.

Without further detailing the testimony, it may be said that it shows that the location of the gin has depreciated the market value of appellee's property as a result of so operating it as to constitute it a nuisance.

It is insisted that the suit should be abated for the reason that there was pending in the chancery court a suit to abate the gin as a nuisance.

A gin is not a nuisance *per se*. The operation of gins is essential in this cotton country, but this neces-

sity does not confer the right to erect a gin in a residential section of a city or town and to so operate it that it becomes a nuisance and destroys or reduces the market value of adjacent property.

The chancery court might or might not have abated the gin by ordering that it should suspend operation or be removed. Indeed, a temporary restraining order was denied.

In the case of *Murphy* v. *Cupp,* 182 Ark. 334, 31 S. W. 2d 396, we quoted with approval the following statement of the law from 21 Cyc. 708: " 'Where the claim to relief is based upon the use which is to be made of a lawful erection, the court will ordinarily refuse to enjoin the construction or completion of the erection; but in such case the defendant, if he proceeds, does so at his peril and is liable to an injunction or an action of damages if such use results in a nuisance. If a building of itself will be a nuisance, its erection may of course be enjoined.' 21 Cyc. 708."

The law applicable to the facts and issues in this case has been stated in a number of our cases cited in the briefs of opposing counsel, and a concrete application thereof is made in the case of *Southern Ice & Utilities Co.* v. *Bryan,* 187 Ark. 186, 58 S. W. 2d 920, to facts not essentially different from those in the instant case. There, an ice plant had been erected in a residential section, and was so operated as to be a nuisance. It was there held that under these facts an adjacent property owner might recover damages to compensate the depreciation in the market value of his property, and that the measure of his damage is the difference between the market value immediately prior to the erection of the plant and its market value after the erection is complete and operation begun.

The instructions to the jury gave this as the measure of damages, and it is insisted that this rule is not correct, and is contrary to the weight of authority on the subject, and that the correct measure of damages is the impairment of the value of the use of the property during

the continuance of the nuisance. Cases from other jurisdictions are cited which approve this measure of damages. It appears from the opinion in the Bryan case, just cited, that we were there urged to adopt this measure of damages, but declined to do so, holding that the difference in market value was the measure of recovery.

It is finally insisted that the verdict is excessive, and that the court erred in failing to grant a new trial on account of evidence discovered since the trial which would have shown it to be so. The basis of this contention is that plaintiff, in testifying as to the value of the property, stated that he purchased subject to numerous forfeitures for general and special taxes, municipal and otherwise, and that it cost him about $800 to clear the title from the tax sales and forfeitures, whereas the amount expended on this account was only $339.60.

It must be remembered, however, that this is not a suit to recover taxes, and the testimony as to the amount of taxes paid was of value only as showing the purchase price. But the price paid for the lots was not conclusive of its market value, but was only a circumstance to consider in determining the market value. The purchaser may have bought the property for less than its market value or may have paid more.

All of the witnesses who testified as to the market value of the property did so without reference to the delinquent taxes. Appellant himself placed a value on appellee's property of $1,250, and his only other witness, testifying as to value, placed it at from $1,500 to $1,600. The witnesses testifying in behalf of appellee placed the value at from $3,000 to $3,500 before the erection of the gin, and these estimates of value were made without any reference to the amount of taxes paid. It appears, moreover, that there was no cross-examination of appellee upon the subject of the amount of taxes paid. Had he been asked in and for what years the lots had been sold for taxes, and the amount of taxes for the nonpayment of which the property had been sold, it would have appeared that appellee had made an exaggerated estimate of the amount of taxes which he paid. But, even so, as has

been said, this was a collateral question bearing upon the purchase price, which was not conclusive of market value.

We conclude, therefore, that this was not such newly-discovered evidence as required the granting of a new trial on account of its discovery. Witnesses for appellee who placed the value of the property before the erection of the gin at from $3,000 to $3,500, testified that the value had been reduced by half, and one witness testified that the value of the property for residential purposes had been totally destroyed.

The testimony is, therefore, sufficient to support the verdict, and as no error appears the judgment must be affirmed, and it is so ordered.