CRAWFORD RYALL ET AL *v.* WATERWORKS
IMPROVEMENT DISTRICT NO. 3 ET AL

5-5000                                     445 S. W. 2d 883

Opinion delivered October 27, 1969

*Brockman & Brockman,* for appellants.

*Odell C. Carter,* for appellees.

CARLETON HARRIS, Chief Justice. This appeal re-
lates to the refusal of the Lincoln County Chancery
Court to grant a temporary injunction on the complaint
of appellants wherein they sought to enjoin the com-
missioners of Waterworks Improvement District No. 3
from proceeding with the construction and erection of
an oxidation treatment plant for sewage near the town
of Star City; the complaint prayed that upon final hear-
ing, the injunction be made permanent. For reversal, it
is simply asserted that the Chancellor erred in not
granting a temporary injunction on the basis of appel-
lants' unrebutted evidence.

No point would be served in relating the testimony
in detail. Appellants offered the testimony of Crawford
Ryall, Grover Brockman, Jr., Clara Shepherd, and Hu-
bert Slaten, Jr., for the purpose of showing that the
proposed oxidation plant is a nuisance. Though con-
struction is not completed, and the plant is not in opera-

tion,[1] the witnesses all expressed the fear that the value of their properties would be depreciated. Mr. Ryall stated that, in his opinion, the value of his property would be tremendously affected, and he also expressed the fear that the plant would be a health hazard. He said that when there is a prevailing southwest wind he would get odors from the present system[2]; which was farther away, and probably would also get odors from the proposed new plant:

"I feel like we will, yes, sir. We might not if we were further from it but being that close to it I feel like we will and by the overflow of it—I feel sure it will overflow the creeks and it will be an odor from that."

Mr. Brockman testified that the new plant would be closer to his home (than the present disposal system), and he felt that the value of his house would be depreciated:

"Well I am thinking it is going to devalue our property. Also I am not real afraid that we will be maybe too much right now but I am thinking in the future what it is going to do to our property. We already have had smells from the other one that comes down the creek and it has me a little gun-shy of this."

He also stated that he was afraid it would affect his deep well system:

"* * * Of course I understand they say it won't hurt it but you still worry about it and of course we—I guess that is about the extent of it is the property value."

Mrs. Shepherd testified that she had lost land sales due to the location of the proposed plant; that the prospective purchasers found out about the plant and they

---

[1]It is not clear how far construction has advanced, or actually whether it has commenced.

[2]A filtration plant.

did not want to build a house close to it.[3] The testimony of Mr. Hubert Slaten, Jr., a certified realty appraiser, was offered by appellants for the purpose of endeavoring to establish damage to the property of appellants, but when asked if the oxidation plant would produce a detrimental effect, Mr. Slaten replied: "It is possible it could, yes, sir." On cross examination, Slaten also stated that it was possible that it would have no effect on the value of the lands.

No facts were presented which established that the plant would constitute a nuisance. It is, of course, understandable that appellants may have fears that the plant will adversely affect the value of their lands and properties—but the fear of what *may* happen is not a sufficient ground for obtaining an injunction. In *Kimmons* v. *Benson,* 220 Ark. 299, 247 S. W. 2d 468, this court said:

"Reviewing the evidence *de novo,* we do not feel able to say with assurance that the appellants' bowling alley will certainly amount to a nuisance in the neighborhood. It may, as the appellees' proof indicates, prove to be a serious annoyance to residents in the vicinity, but on the other hand it may turn out to be a harmless place of amusement that will not be noticed by these appellees and their neighbors. In these circumstances equity ought not to prohibit the erection of the building. *Such a prohibition is permissible only when the preponderance of the testimony shows that the activity is certain to be a nuisance.[4] Murphy* v. *Cupp,* 182 Ark. 334, 31 S. W. 2d 396; *Buckner* v. *Tillman,* 195 Ark. 149, 110 S. W. 2d 1060. In the *Buckner* case we refused to enjoin the erection of a cotton gin in a residential area because there was doubt that it would prove to be a nuisance, and for the same reason we have declined to stay the installation of a sawmill. *Eddy* v. *Thornton,* 205 Ark. 843, 170 S. W. 2d 995."

---

[3]This testimony was hearsay, but there was no objection to it.

[4]Emphasis supplied.

Also, the court commented that the hearing was only for purposes of determining whether a temporary injunction should be granted, and that, if the proof were sufficiently developed to warrant injunctive relief, a permanent injunction could be granted after the final hearing.[5]

We do not agree that the court committed error in failing to grant temporary relief.

Affirmed.

[5]It is interesting that the court in its oral remarks from the Bench, stated that Mr. Ryall's and Mr. Brockman's septic tanks were closer to their wells than the proposed oxidation plant.